Commonwealth *v.* Davis, Appellant.

Argued June 11, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Elizabeth Langford Green* and *Melvin Dildine,* Assistant Defenders, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 11, 1969:
Judgment of sentence affirmed.

194

This is an attack on pretrial identifications of appellant which were introduced at his trial. The identifications were made subsequent to the filing of *United States v. Wade,* 388 U.S. 218 (1967), and appellant claims that they were made in violation of the principles set forth in that decision as well as those enunciated in *Stovall v. Denno,* 388 U.S. 293 (1967).

The facts in this case are as follows:

On November 10, 1967, two men wearing sunglasses robbed the premises of Powers, a beer distributor. Upon leaving the building they were pursued by Powers who fired a shot at them. It appeared to Powers that one of the robbers had been hit in the head by the bullet; both robbers escaped, however. The police were immediately notified of the incident.

Within an hour, a police officer who had heard of the robbery over the police radio, stopped an automobile that had gone through a red light. The driver of the car told the officer that "he had a man that he just picked up at Belmont and Lancaster Avenue [in the immediate vicinity of the robbery] and he said he was suffering from a head wound and said he was wounded by a stray shot when he got off a PTC trolley." The officer further testified that "At that time I seen the defendant and seen he had a piece of cloth to the back of his head. Instead of wasting any more valuable time I phoned for additional help to meet me at Presbyterian Hospital because I had a carload of males and one was wounded, and they might be in connection with the holdup at 1222 Belmont Avenue. So I radioed for additional assistance to meet me at the hospital."

Appellant was taken to the hospital emergency ward. Within several minutes of his arrival at least four more police cars converged on the hospital. Powers

was then summoned from his place of business and taken by the police to the hospital. He was told that the police had a suspect they wanted him to identify. Powers then viewed appellant who was lying in the emergency ward in an unconscious state, covered up to his neck by a sheet, with his eyes closed and not wearing sunglasses. Powers identified him as one of the robbers.

Several hours later, appellant was released from the hospital and taken to the police station where he was placed in an interrogation room, sat in a chair and confined by handcuffs. Thereupon the police summoned a 14 year old boy, Ronald Mercer, who had witnessed Powers chasing his two attackers. The boy at a suppression hearing testified that he had not seen the faces of the robbers as they were running away from him, but that nonetheless he was able to identify appellant as the robber because "he was the only one" in the interrogation room with handcuffs.

At that point the district attorney stated, "I think I am compelled to inform the Court that if this examination is going to the suppression of identification by young Mr. Mercer here, that I am not going to call Mr. Mercer to identify Mr. Davis. . . . I was surprised when young Ronald here identified this defendant as the man here in Court. I was taken by surprise. I am not going to call him for identification purposes."

Nonetheless, the lower court in its opinion relied on this identification as supporting the conviction. "Both the Mercer boy and Mr. Powers positively identified the defendant as the man who was involved in the robbery and flight from Powers' place of business."

This was manifestly improper in light of the prior stipulation by the district attorney; in addition, even without this stipulation, *Wade* would proscribe the use

of an identification whose procedure failed to provide a lineup where appellant was represented by counsel. As the Court stated in *Wade*, because the "confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial" a pretrial identification is a critical stage "of the prosecution at which [an accused is] as much entitled to such aid [of counsel] . . . as at the trial itself."

Moreover, appellant has vigorously objected to the Powers hospital room identification as also being proscribed by *Wade*.

The district attorney readily concedes that were appellant identified by the procedure followed in the instant case, after he had been indicted, that such identification would be inadmissible. He argues, however, that *Wade* does not apply to pre-indictment identifications made during the "investigatory stage" and at the time a suspect is "unaccused." Since he apparently concludes that the hospital identification took place during such time, he maintains that "*Wade* requirements do not extend" to this instance.

In support of this proposition the district attorney cites *United States v. Davis*, 399 F. 2d 948 (2d Cir. 1968) and *Russell v. United States*, 408 F. 2d 1280, 4 Cr. L. Rep. 2349 (D.C. Cir. January 24, 1969).[1]

These cases are, in my view, inapposite.

Judge FRIENDLY in *United States v. Davis*, stated that *Wade* does not apply to all identifications made

---

[1] *Stewart v. United States*, F. Supp. , 4 Cr. L. Rep. 2425 (1969), and *Trask v. State*, 247 A. 2d 114 (Me. 1968), which are also cited to us by the district attorney, concern pre-*Wade* identifications. As such they have no hearing on the issue now before us.

after an accused is taken into custody. Although the Sixth Amendment right to an attorney "applies to the accused in 'all criminal prosecutions,' and while *Wade* makes clear that this includes certain pretrial proceedings . . . that is a long way from saying that the protection attaches as soon as suspicion is aroused." Rather, he contends, the *Wade* rights attach only after a criminal investigation shifts from the investigatory to the accusatory stage. Cf. *Escobedo v. Illinois,* 378 U.S. 478 (1964).

While Judge FRIENDLY does not fully articulate the reasons for this principle which he extracts from his reading of *Wade, Stovall v. Denno,* supra, *Miranda v. Arizona,* 384 U.S. 436 (1966), and *Escobedo,* supra, he indicates that the principle rests on the belief that the police should not be required to expend substantial amounts of time and energy at a preliminary stage in order to separate the wheat from the chaff before they have settled on a prime suspect.

Moreover, Judge FRIENDLY also argues in dictum that *Wade* would not apply to an identification made incident to the commission of an offense. He states that *Wade* is not controlling "where a man running away from the scene of an assault was collared by an officer who asked the victim and the bystanders whether the man was the perpetrator. It is hard to believe [that *Wade*] meant to prevent an officer from making such a routine, uncontrived inquiry and to require that the victim and the bystanders be carted off to a police station, held on the spot until counsel could be provided, or dismissed until a lineup attended by counsel could be arranged at some later time."

Underlying this dictum (and here I am proceeding by assumption, since Judge FRIENDLY does not elaborate), is once again concern for the convenience of the witnesses to the crime, the convenience to the police

in not having to arrange a lineup while the real felon may be furthering his escape from the vicinity of the crime, plus the additional factor that the elapsing of time from the point of arrest will necessarily dim the recollection of the witnesses to the offense. In addition, there may also be the feeling that, because the identification is so close in time to the offense, that a prompt identification albeit without the *Wade* safeguards, would be more reliable than one conducted where more time had elapsed. But in the example that Judge FRIENDLY uses, it is important to note that the fleeing felon is definitely a prime suspect and that the process of police work has shifted to the accusatory stage.

Even accepting arguendo these two exceptions to the general principle stated in *Wade*, however, they cannot be applied to the instant case.

First, this identification was made after the police investigation had reached the accusatory stage. While in the emergency room appellant was in actual police custody, as evidenced by the presence of at least four police cars at the hospital and the police officers physically surrounding him. This custody was based on excellent probable cause. Appellant had a head wound similar to that believed to have been incurred by one of the robbers. Moreover, appellant had alleged prior to his identification that he had sustained his injury in the immediate vicinity of the holdup. Accordingly, appellant was not just a general suspect but the only suspect, and an obvious one. Had he been questioned prior to his identification he would have been entitled to counsel and, similarly, under Judge FRIENDLY'S analysis, his *Wade* rights should have attached as well.

Second, the identification of the appellant by Powers was not "incident" to the robbery either in terms of distance or of time. Rather, the identification took

place at the emergency ward of a hospital, a good distance from the scene of the crime, and over one hour after the robbery was committed.

Nor was the identification necessitated by the convenience of the police, the witness or of the accused. Instead, as no other suspects were apprehended in the interim between the robbery and the hospital identification, and since the robbers could have left the vicinity of the crime by the time the identification was made, police investigation of other "leads" was probably of a minimal nature at best. There was no showing that appellant's identification forestalled other avenues of police discovery. In this light, the police would have only been slightly inconvenienced had they waited a few hours so that a lineup with counsel present could have been held. Similarly, Powers was not at the hospital initially but was escorted there by the police for the sole purpose of making an identification. Had a lineup been held at a later time, it would have been just as simple for the police to have him come to view it as it was for the police to have an emergency ward identification made. Under either circumstance, Powers would have been subject to the same inconvenience of leaving his place of business.

Concern for the appellant also would have dictated that the police arrange a lineup identification. While Judge FRIENDLY would not consider this a proper consideration in determining whether *Wade* should apply, at least one other court has so held. In *Russell v. United States*, supra, the Court of Appeals for the District of Columbia stated that a valid reason for dispensing with a *Wade* lineup at the pre-indictment stage would be concern over the detention of innocent suspects and the desirability of their expeditious release. This argument rings hollow, however, because a suspect may protect himself by making an intelligent

waiver of the right to have counsel present. Such expeditious release of innocent suspects deemed important in *Russell* might thus be accomplished in many cases through a waiver of the right to counsel and a subsequent prompt confrontation. Note, United States v. Wade and On the Spot Identifications, 30 Pitt. L. Rev. 517 at 527-528 (1969).

Thus, no countervailing reason existed for the police to have set up the identification as they did; as such their procedure violated the precepts of *Wade*. I do not find it necessary, therefore, to reach the question raised by Judge FRIENDLY of whether *Wade* extends to identifications made incident to the offense or to an investigation that has not reached the accusatory stage.

Moreover, even were *Wade* inapplicable, the emergency room identification violates the principles of fundamental fairness as set forth in *Stovall v. Denno*, supra, which governs identifications to which *Wade* does not apply. The instant procedure was designed to effect a positive identification. The victim of the robbery was told that a suspect was in the hospital with a head wound, and that the injury occurred at about the same time that he (the witness) thought that he had shot his assailant in the head. The witness was taken to the hospital by the police and, once there, observed the many police cars by the emergency entrance as well as the many police present in the ward itself. These factors could not help but suggest to the witness that the police were convinced that they had caught the robber. In such a situation any identification may be colored by the innuendo and inferences resulting from the attendant circumstances. "The opportunity for suggestion inherent in the procedure used to secure this identification is manifest." *Palmer v. Peyton*, 359 F. 2d 199 (4th Cir. 1966).

In addition, the hospital room identification here was not imperative as it was in *Stovall*, where the prosecuting witness was in danger of dying, not the accused. Rather, all we have in the instant case is a suspect being shown "singly to persons for the purpose of identification," under the most suggestive of circumstances, a practice which "has been widely condemned." *Stovall* at 302. As the Court in *Wade* stated, "the vice of suggestion created by the identification in *Stovall*, supra, was the presentation to the witness of the suspect alone handcuffed to the police officers. It is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." At 234.

Both *Stewart v. United States*, supra, and *Trask v. State*, supra, which held that the doctrine of fundamental fairness enunciated in *Stovall* was not violated by one to one confrontations, are distinguishable. In each case the accused had been a drinking partner of the prosecuting witness for a substantial period of time before the offense was committed. This, of course negates the inference that the attendant circumstances of the one to one confrontations themselves contributed to a positive identification. In the instant case, however, the robbery had taken no longer than six or seven minutes and the robbers wore sunglasses throughout. The resulting identification must, therefore, be viewed with more caution than would be the case in either *Stewart* or *Trask*.

The identification of appellant at the hospital, therefore, may not serve as the basis for his conviction.

We are thus placed in the same position that the court was in *Wade*: "On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. This was not an issue at trial (because of the lower court's re-

fusal to suppress either Mercer's or the hospital identification), although there is some evidence relevant to a determination. That inquiry is most properly made in [the trial court]."

Therefore, I would vacate the judgment of sentence below and order a new trial in accordance with the above stated principles.

