**Bobby RUSSELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21571.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 17, 1968.

Decided Jan. 24, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1786.

Messrs. David S. Scrivener, and Robert T. Gaston, Washington, D. C. (appointed by this court) for appellant.

Mr. Clarence A. Jacobson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and ROBINSON, Circuit Judges.

BAZELON, Chief Judge:

This appeal from a conviction for housebreaking and petit larceny raises issues concerning the admissibility of identification evidence under United States v. Wade [1] and Stovall v. Denno. [2]

At day-break on June 28, 1967, one George McCann investigated the sounds of a blaring radio and breaking glass at the Community Shoe Shine shop. The radio was sitting on the sidewalk outside the broken shop window. Stationing himself in a brightly-lighted gas station across the street, he saw a man emerge from the shop, look across at him, and proceed past him up the street. McCann went directly to a nearby police station and reported the incident three or four minutes after it occurred. The police broadcast a radio look-out, and officers in a responding squad car promptly encountered appellant in the vicinity. Since he matched the radioed description of the suspect and fled from the approaching police car, the officers pursued him to the porch of a house. There they discovered that he had a radio in one hand and a hatful of cigarettes and small change concealed under his coat. He also had a coat hanger and a screwdriver in his pocket, and on this particular summer night he was wearing gloves. They arrested him [3] and drove him to the shoe shine shop where McCann identified him as the man he had seen coming out of the shop.

At trial, a police officer described the out-of-court identification, and in addition McCann identified appellant in court. McCann also testified that the radio found in appellant's possession looked like the one he had seen on the sidewalk while appellant was in the shop. The owner of the shop established that cigarettes and change had been taken from his vending machines. [4] Appellant, as the sole defense witness, denied having been in the shop and presented an implausible alibi which appeared even less plausible under cross examination. Impressive as was the government's case, however, it was not so overwhelming as

---

1. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

2. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

3. Appellant's contention that the police lacked probable cause for an arrest at this juncture is plainly without merit.

4. Appellant contends there was insufficient evidence to establish a larceny be-

cause the cigarettes and change found in his possession were not specifically identified as those taken from the shop. There was, however, ample circumstantial evidence to support the inference that he had filled his hat from the larceny victim's machines. We know of no case requiring actual identification of such fungible goods, and it is apparent that any such requirement would be unworkable.

to render a *Wade* or *Stovall* violation harmless error under the stringent standard set by Chapman v. California.[5]

## I

In *Wade,* the Supreme Court held that a post-indictment lineup is a "critical stage" in the criminal process at which the presence of counsel is required[6]. Since McCann first identified appellant after *Wade* was decided, we must determine whether the *Wade* rule applies to prompt confrontations with an eyewitness at the scene of the crime.

The first court to confront this difficult question held that it does not. In Commonwealth v. Bumpus,[7] the eye-witness had feigned sleep while a burglar prowled his bedroom, and immediately afterwards had called the police with a description. The police then picked up the defendant in the neighborhood and brought him back, without counsel, for identification. A unanimous court held *Wade* distinguishable on its facts and rationale and affirmed the conviction[8].

But some of the language in *Wade* implies that a suspect has a right to counsel at any pretrial confrontation arranged by the police, regardless of the circumstances. The *Wade* Court said it was obliged to "scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's

basic right to a fair trial * * *."[9] Scrutinizing, it discovered that

> the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial.[10] It went on to observe:

> The pretrial confrontation for purposes of identification may take the form of a lineup, also known as an "identification parade" or "showup," as in the present case, *or presentation of the suspect alone* to the witness, as in Stovall v. Denno * * *. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification.[11]

In all these confrontations the Court said the absence of counsel presents "serious difficulty in depicting what transpires * * *."[12] On the strength of this language, the Fifth Circuit Court of Appeals recently concluded that *Wade*

> applies to any lineup, to any other techniques employed to produce an identification and a fortiori to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place * * *.[13]

Accordingly, in United States v. Kinnard,[14] Judge Gesell of the District Court

---

5. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

6. 388 U.S. at 237, 87 S.Ct. 1926.

7. 238 N.E.2d 343 (Mass.1968).

8. The court said:
   Reasonable confrontations of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from post-indictment confrontations (such as those in the *Wade* and *Gilbert* cases) in serious crimes after a significant interval of time, and in the absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the *Wade* and *Gilbert* cases in such circumstances. Until we have more guidance than at

present about the scope of necessary application of these cases, we shall regard them as not intended to apply to facts like those in the case at bar. *Id.* at 347.

9. 388 U.S. at 227, 87 S.Ct. at 1932.

10. *Id.* at 228, 87 S.Ct. at 1933 (emphasis added).

11. *Id.* at 229, 87 S.Ct. at 1933 (emphasis added).

12. *Id.* at 230, 87 S.Ct. at 1934.

13. Rivers v. United States, 400 F.2d 935 (5 Cir. 1968).

14. 294 F.Supp. 286 (D.D.C., November 4, 1968). Judge Gesell said in part: Many different situations occur on our

for the District of Columbia felt compelled to exclude an on-the-scene identification occurring some 45 minutes after the robbery, in spite of his own vehement dissent to the wisdom of prohibiting such identifications.

The passage in the *Wade* opinion which most nearly confronts the circumstances of the instant case provides uncertain guidance. The Court said:

> No substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel. Concern is expressed that the requirement will forestall prompt identifications * * *. [W]e note that in the two cases in which the right to counsel is today held to apply, counsel had already been appointed and no argument is made in either case that notice to counsel would have prejudicially delayed the confrontations. Moreover, we leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay.[15]

This language leaves room for modification of the *Wade* rule in cases involving prompt confrontations. But it also leaves room for argument that at least "substitute counsel" would be required in any event.[16]

While the language of *Wade* would thus seem to encompass prompt on-the-scene identifications, they do not fall within the holdings of *Wade* or its companion case, Gilbert v. California [17]. The confrontations disapproved in these cases were post-indictment lineups. Similarly, though it spoke in broad terms, the Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial.[18] The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find "no substantial countervailing policy considerations * * * against the requirement of the presence of counsel." [19]

The present case, however, involves an immediate on-the-scene confrontation at 5 o'clock in the morning when there would necessarily be a long delay in summoning appellant's counsel, or a substitute counsel, to observe a formal

---

streets daily which, as a practical matter, warrant if not require the police to present a suspect to a complaining witness shortly following detention or arrest. Indeed, such confrontations often occur even without any special police effort to bring them about. Defense counsel cannot always be riding in police cruisers. If police are no longer able to get identification confrontation promptly while the complainant's recollection is fresh, a drastic change in police procedures must take place. The police need greater flexibility than an absolute application of the Wade ruling as presently drawn appears to portend.

The Court fully recognizes that hazards are present in immediate one-man confrontations but such confrontations also have benefits in terms of their relation to effective police work and as a safeguard to preventing false accusation. If there were some other practical way of handling identification matters promptly without fear of unwar-

ranted suggestion, it of course should be used exclusively, but there is no such technique available.
96 Daily Wash.Law Rep. 2041, 2044 (Dec. 13, 1968).

15. 388 U.S. at 237, 87 S.Ct. at 1937.

16. In a footnote, the Court commented that

> Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel.

*Id.* n. 27.

17. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

18. See the discussion in *Wade*, 388 U.S. at 230–237, 87 S.Ct. 1926.

19. Text at note 15, *supra.*

lineup. Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement.[20]

■ Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive [21]. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.

Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his "mind's eye" a face or a figure which he is hard put to describe adequately in words. Though the image of an "unforgettable face" may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

■ Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will "if anything promote fairness, by assuring reliability * *." [22] This probability, together with the desirability of expeditious release of innocent suspects, presents "substantial countervailing policy considerations" which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that *Wade* does not require exclusion of McCann's identification.

This conclusion does not rest on a determination that McCann's identification was in fact especially reliable. It rests instead on a general rule that it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before.

## II

■ There remains the question of whether the confrontation in this case "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] * * * was denied due process of law." [23] On the same reasoning which underlies our present views on the *Wade* issue, we have previously held that absent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations; [24] and the record in this case does not reveal any unusually suggestive

20. We wish to make clear that the holding of this case approves only those on-the-scene identifications which occur within minutes of the witnessed crime. *Cf.* Wise v. United States, 127 U.S.App. D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L. Ed.2d 1164 (1968); Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (decided December 13, 1968).

21. See Biggers v. Tennessee, 390 U.S. 404, 407, 88 S.Ct. 979, 19 L.Ed.2d 1267 (dissenting opinion of Douglas, J.); Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256 (decided January 31, 1968); Wise v. United States and Bates v. United States, *supra* note 20.

22. Wise v. United States, *supra* note 20, 127 U.S.App.D.C. at 282, 383 F.2d at 209.

23. Stovall v. Denno, *supra* note 2, 388 U.S. at 302, 87 S.Ct. at 1972.

24. Wise v. United States, *supra* note 20.

circumstances in appellant's confrontation with McCann.

■ Ordinarily, this would be the end of our inquiry. As with the right to counsel, the threshold due process question is not whether the identification was in fact reliable. Stovall v. Denno did not erect a due process barrier against all unreliable identifications;[25] it requires exclusion only of evidence which could and should have been obtained by procedures less conducive to unreliability. Thus, as a general rule, if the confrontation was not improper, the reliability of the resulting identification is for the jury to decide.

However, in post-*Wade* cases the excusable absence of counsel, while not dispositive, is among the "totality of the circumstances"[26] bearing on the due process question. And since this case also presents a single-suspect in-custody confrontation which may be suggestive,[27] the court must carefully consider all possible evidence of actual unreliability in determining whether the requirements of due process have been met.

The troublesome feature of McCann's identification is the fact that from his vantage point across the street at 4:30 a. m., he may not have had a good look at the culprit. McCann was, of course, watching for the purpose of aiding law enforcement and presumably was paying close attention. He testified that he saw appellant's face, that the area was well-lighted, and that daylight was breaking. He gave the police a description on the basis of which they suspected appellant. Unfortunately, however, no one inquired at trial into the details of the description. Nor did McCann say whether he saw

appellant pick up the radio. A better record on these details would remove all doubt, and in the future trial judges should insist on such a record. But the facts relating to the only reason for doubt in this case—i. e., McCann's impaired opportunity for accurate observation—were exhaustively explored before the jury. For this reason, and in the light of all the evidence, we find no infringement of due process.

Affirmed.

DANAHER, Circuit Judge (concurring):

Of course I agree that Russell's conviction must be affirmed, indeed to take any other view would be sheer travesty in my judgment.

About 4:30 A.M. on June 28, 1967,[1] one McCann heard a radio playing outside in the street and then the crash of breaking glass.

Investigating, he saw the radio in operation on the sidewalk outside a business establishment in a well lighted area.

He saw Russell come out of the shop.

Immediately McCann reported to the police what he had heard and seen, and an officer broadcast by radio the description of Russell as supplied by McCann who was then brought right back to the store.

Officers in a police cruiser in the neighborhood picked up the broadcast and shortly thereafter saw Russell.

The latter, carrying a radio, darted into the hallway of a nearby apartment where he was presently arrested and was found to be carrying a hatful of

---

**25.** As our recent decision in Clemons v. United States, 133 U.S.App.D.C. ——, 408 F.2d 1230 (decided December 6, 1968) (en banc), makes clear, considerations bearing on the actual reliability of an identification are relevant only to a determination of whether there was an "independent source" for an identification made at or after an unnecessarily suggestive confrontation. Even then, the question is not whether the identification was ac-

curate in fact, but whether the witness was likely to make an accurate identification. *Id.* pp, ——, —— – ——, 408 F.2d 1237–1238, 1248–1250.

**26.** Stovall v. Denno, *supra* note 2, 388 U. S. at 302, 87 S.Ct. 1967.

**27.** See text at note 20, *supra*.

**I.** And so, post-United States v. Wade, Gilbert v. California and Stovall v. Denno.

nickels, dimes and quarters and several packages of cigarettes.[2]

Following Russell's arrest, the officers brought him back to the shop, and Russell was there positively identified by McCann as the man he had seen leaving the burglarized shop. McCann so testified at trial.

At trial Russell testified that a half block ahead of him he had seen a man drop a paper bag which upon examination by Russell was found to contain the nickels, dimes and quarters and the cigarettes which Russell said he placed in his own hat.

He explained that the gloves he was wearing that June morning were used for boxing but agreed that they were not boxing gloves.

He testified that a screwdriver found in his possession was used by him to fix bicycles for little boys, but he had no special reason for carrying the screwdriver at 4:30 A.M. that day.

He entered the apartment hallway, he said, to talk over business with a man named "Tom" whose address he did not know and with whom he had been acquainted for a week.

Even to suggest that the confrontation[3] described might require the presence of a lawyer or that a lineup be conducted seems to me an exercise in stultification. I have no slightest doubt that there is no basis for an intimation that there had been a denial of due process.

Apart from any other consideration I point to the Omnibus Crime Control and Safe Streets Act of 1968,[4] Title II, section 3502 of which provides:

The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under article III of the Constitution of the United States.

In support of the section thus quoted, Senate Report No. 1097[5] explains:

### ADMISSIBILITY OF EYE-WITNESS TESTIMONY

The use of eyewitness testimony in the trial of criminal cases is an essential prosecutorial tool. The recent case of United States v. Wade, 87 S.Ct. 1926, 388 U.S. 218 [18 L.Ed.2d 1149] (1967), struck a harmful blow at the nationwide effort to control crime. The Court held that an in-court identification of the suspect by an eyewitness is inadmissible unless the prosecution can show that the identification is independent of any prior identification by the witness while the suspect was in custody, and while his court appointed lawyer was neither notified nor present. It is incredible that a victim is not permitted to identify his assailant in court. The same is true of eyewitnesses who saw the victim assailed or murdered. The fact that eyewitness might on some occasion prior to trial have identified the accused, without a lawyer for the accused being present, cannot in reason, law, or commonsense justify such a disastrous rule of evidence. Nothing in the Constitution warrants it. To counter this harmful effect, the committee adopted that portion of title II providing that eyewitness testimony is admissible in criminal prosecutions brough in the Federal courts * * *.[6]

In light of the record and the treatment I have hereinbefore submitted, it may be gathered that I perceive no issue of constitutional dimension. I think this case like many others which are brought here nowadays, should have been disposed of summarily as utterly frivolous.

---

2. In the business establishment which had been burglarized a coin-operated juke box and a vending machine had been rifled.

3. The thoroughly experienced trial Judge Youngdahl characterized the circumstances as the strongest case of identification he had observed in 16 years on the trial bench.

4. P.L. 91–351, 82 STAT. 197 (1968).

5. 2 U.S.CODE CONG. & AD.NEWS, 1968, p. 2112.

6. *Id.* at 2139.