James E. **FLAHERTY**, Petitioner,

v.

Douglas H. **VINZANT**, Superintendent, **M. C. I., Walpole, Respondent.**

Misc. Civ. No. 73–135–G.

United States District Court, D. Massachusetts.

Dec. 30, 1974.

Daniel F. Featherston, Jr., Boston, Mass., for petitioner.

James X. Kenneally, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER DISMISSING PETITION

GARRITY, District Judge.

Petitioner in this action seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is being unconstitutionally incarcerated for armed robbery.[1] His state judicial remedies were exhausted on May 30, 1973 when the Supreme Judicial Court of Massachusetts declined to review the Massachusetts Appellate Court's affirmance of his conviction. That court's affirmance is reported at 1973 Mass.App.Adv.Sheets 327, 295 N.E.2d 698. The petitioner's claim of an infringement of his constitutional rights arises out of an allegedly unconstitutionally suggestive "show-up" at the scene of the robbery by the police very shortly after the robbery and the subsequent admission at his trial of allegedly tainted in-court identifications by the witnesses at the show-up. This matter was referred to a magistrate who held a hearing and received briefs from the parties. He recommended that an evidentiary hearing be held on the independence of the in-court identification of the petitioner by three witnesses.

In the state court the petitioner before trial successfully moved to suppress the evidence of his identification by witnesses at the show-up. The trial judge, however, after a voir-dire[2] allowed the witnesses to identify the petitioner in court as the armed robber, over the petitioner's objection.

Since the facts color substantially the petitioner's claim, we will set them out at some length. On November 5, 1971 at approximately 4:00 P.M. the Household Finance Office, on the second floor of 294 Washington Street, Boston, was robbed by an armed white man wearing a white handkerchief for a mask and very loud and distinctive clothing. Within seconds of the robber's departure from the office, a male employee of the finance office opened a window fronting on Spring Lane and called for the police, shouting that they had just been robbed. A now-deceased Boston police officer, off-duty and in civilian clothes chanced to be walking near the window. The officer inquired how many exits there were from the building and was furnished a description of the robber. Positioning himself on Washington Street where he could observe two of three exits, Sergeant Rinaldi saw the petitioner exit the building on Spring Lane and began to pursue him toward Devonshire Street. On Devonshire Street the petitioner began to enter an automobile. The police officer laid across the trunk of the car, pointing his revolver at the petitioner, identified himself as a police officer and commanded the petitioner to halt or be shot. The petitioner did not halt but entered the car and attempted to start it. Officer Rinaldi moved to the side of the vehicle placing his revolver against the petitioner's temple and ordered him to freeze. The petitioner continued his attempt to start the car and moved his left hand as if to reach for something. At this point the police officer opened the door and pulled the petitioner from the vehicle. The officer then found a revolver under the petitioner's jacket. In one pocket were two

---

1. Petitioner does not challenge a simultaneous conviction for unlawful possession of a revolver.

2. In conducting the voir dire the judge asked only the leading and conclusory question whether the witnesses' identification of the defendant was based solely upon his observations during the crime. Assuming that a show-up was unconstitutionally suggestive, and that the defense attorney was not seeking simply to repeat evidence the judge had previously heard during a pretrial motion to suppress, such a restrictive inquiry would be constitutionally insufficient.

bundles of folded bills, the top one containing $387, the other a small amount. In the other pocket were found two handkerchiefs, one folded in the shape of the mask worn by the robber, with the ends still wrinkled as if they had been knotted. The petitioner was taken to the police station and charged with possession of a dangerous weapon. He was then returned, within twenty minutes of the robbery, to the finance office, where he was identified by all three employees. Later that day the finance office's computerized accounting system showed that exactly $387 was missing.

At the petitioner's trial a seventeen-year-old youth who had previously confessed to several armed robberies, and who had been confined for some time with the petitioner at the Charles Street Jail, took the stand and testified that he had committed the robbery and not the petitioner. There was a substantial and readily observable difference in age, body size, and hair between the petitioner and the witness.

Petitioner alleges three grounds in support of issuance of the writ: (a) that the commonwealth failed to meet its burden of establishing by clear and convincing evidence that the in-court identification of the petitioner by the three employees of the finance office was not based upon observations made during the allegedly constitutionally impermissible show-up, but only upon observations made at the time of the robbery; (b) that he was denied procedural due process, the right to confront witnesses and the right to counsel in that the trial judge refused to allow cross-examination during a voir dire to determine the source of the witnesses' memory relied upon for an in-court identification; and (c) that he was denied due process when the trial judge refused to strike a non-responsive answer of a police officer which informed the jury of the show-up identification of the petitioner. All of these claims present substantial questions which, if established, might entitle the petitioner to relief; however, they are all premised upon the conclusion that the show-up conducted shortly after the crime was unconstitutional. We do not agree with that premise.

■ The petitioner first contends that the show-up violated his Sixth Amendment right to counsel. If so, then the show-up constituted a per se violation of his rights. See United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The Supreme Court in Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, made the per se exclusion of identification testimony when counsel is absent inapplicable before the "adversary judicial criminal proceedings" has begun. *Kirby, supra,* at 689, 92 S.Ct. 1877. The petitioner contends that the "adversary judicial criminal proceedings" had begun for him because he had been arrested and taken to the police station where he was booked before the show-up took place. This is not what the Court meant by "adversary judicial criminal proceedings." The Court in *Kirby, supra,* at 684, 92 S.Ct. 1877, specifically pointed out that the question at issue was whether the *Wade-Gilbert* per se exclusionary rule should be extended to pre-indictment identifications. The Court made it clear that it was the initiation of judicial proceedings which called for the application of the *Wade-Gilbert* rule. *Id.* at 689, 92 S.Ct. 1877. If arrest and removal to a police station were sufficient to invoke the per se rule, *Kirby* would have been decided the opposite way. Therefore the petitioner's show-up was not in violation of the Sixth Amendment.

■ Turning to the petitioner's claim based upon the Due Process Clause, the protection afforded by the Fourteenth Amendment is of a much more restricted nature than the per se rule under *Wade* and *Gilbert*. Only if, upon the totality of the circumstances surrounding the show-up, it is so "unnecessarily suggestive and conducive to

irreparable mistaken identification" that he was denied due process of law will the identification testimony be excluded. *Kirby, supra,* at 691, 92 S.Ct. at 1883; Stovall v. Denno, 1967, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Only upon this premise may a witness's subsequent identification be attacked as tainted. Any procedural error which prevented an attempt to establish such taint becomes immaterial under *Kirby* and *Stovall* when the show-up was not itself unconstitutional.

Show-ups such as the police conducted in this case have been generally condemned. See *Stovall, supra,* at 302, 87 S.Ct. 1967. When they are used, the police take the unnecessary risk that not only the show-up identification but all subsequent identifications by the witnesses involved will be excluded at trial. See Cooper v. Picard, 1 Cir. 1970, 428 F.2d 1351, 1354. These criticisms are peculiarly appropriate when there are no mitigating justifications for the suggestive circumstances of the show-up such as the imminent death of the witness or a genuine concern by the police that the wrong man may have been apprehended and a criminal might remain at large in the vicinity. See *Stovall, supra*; United States v. Perry, 1971, 145 U.S.App.D.C. 364, 449 F.2d 1026, 1033. While the latter justification might be applicable in this case, the evidence known to the police at the time of the petitioner's arrest made it doubtful that they had the wrong individual. On the other hand, since they did not know that one "roll" of bills in his pocket was the exact amount stolen from the finance office until substantially after the show-up, the show-up might have genuinely been an investigative necessity. The conduct of the police in only "booking" the petitioner for the "dangerous weapon" charge before the show-up would also be consistent with a lingering uncertainty

whether the petitioner was the armed robber. However, after a thorough examination of the transcript of the pretrial hearing on the motion to suppress and the transcript of the trial itself, we need not rely on any such justification because we have concluded that on the totality of the circumstances, the show-up was not unconstitutional and therefore the petitioner's rights have not been violated.

■ The Supreme Court has recently discussed in detail what constitutes an unconstitutionally suggestive show-up. Neil v. Biggers, 1972, 409 U.S. 188, 196–201, 93 S.Ct. 375, 34 L.Ed.2d 401.[3] None of those circumstances are present in this case. The Supreme Court has stated, at 199, 93 S.Ct. at 382,

> "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

These factors all indicate in the instant case that the show-up was not unconstitutional. In this case the testimony at trial clearly demonstrated that all of these factors would support the reliability of the witnesses' identification of the petitioner. The witnesses at the time of the robbery had a clear view of the robber from a short distance in a well-lit room for five to ten minutes. Compare Simmons v. United States, 1968, 390 U. S. 377, 385, 88 S.Ct. 967, 19 L.Ed.2d 1247 (five minutes to observe the robber in a well-lit room) with Smith v. Coiner, *supra,* 473 F.2d 878 (a two-second view with a flashlight) and Coleman v. Alabama, 1970, 399 U.S. 1, 4, 90 S.Ct. 1999,

---

3. The *Neil* standard applies only to pre-*Stovall* cases. *Neil, supra,* at 198, 93 S.Ct. 375; Smith v. Coiner, 4 Cir. 1973, 473 F.2d 877, 882, cert. den. sub nom. Wallace v. Smith, 1973, 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.

2d 743. However, the Court's analysis of what circumstances are unnecessarily suggestive is equally applicable to post-*Stovall* cases.

26 L.Ed.2d 387 (a momentary view during a flash of automobile headlights). None of the witnesses had an eye impediment. Contrast Smith v. Coiner, *supra* (the witness had cataracts in both eyes and was not wearing her glasses when she momentarily observed the criminal's face). One witness in this case even instructed another during the robbery to get a good look at the criminal during the robbery so as to be able to identify him later.

The initial description given to the police of the robber was detailed and consistent with the petitioner's appearance. Compare Cooper v. Picard, D.Mass.1970, 316 F.Supp. 856, 863 (witness gave police a substantially erroneous description and missed several conspicuous features); Smith v. Coiner, *supra*, 473 F. 2d at 878, and Coleman v. Alabama, *supra*, 399 U.S. at 4, 90 S.Ct. 1999. Here the witnesses correctly told the police the color of petitioner's hair, described it, and accurately described his clothing. They could not have seen the lower portion of his face because of a mask worn during the hold-up.

The witnesses identified the defendant about twenty minutes after the robbery.[4] There was virtually no time for their memory to fade. Thus the probability of an erroneous identification was slight. The robber had worn very distinctive clothes which increased the probability of a correct identification since there was no interval in which the robber could have changed clothes. Thus the identification did not have to be made solely on the basis of height, weight, and the upper half of the petitioner's face. This fact obviously decreases the impact of the suggestiveness of a one-on-one show-up.

While all show-ups have an inherently suggestive content, here it was not excessively so. The witnesses all testified that they did not observe handcuffs on the defendant at the show-up. Compare United States ex rel. Thomas v. New Jersey, 3 Cir. 1973, 472 F.2d 735, 740, cert. den., 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973) (a black suspect, in a disheveled state, was surrounded by white, neatly dressed policemen).

■ Contrary to the petitioner's contention, the record does not show that the witnesses had been "programed" to identify any person the police might have brought in. Obviously the suggestiveness of any show-up can be overcome by the ability of a witness to make an independent identification. Here the observations made by the witnesses during the robbery would have undoubtedly allowed them to make an independent identification even if the show-up had been more suggestive than it was. The witnesses spontaneously and unhesitatingly identified the defendant at once at the show-up as the robber. Compare Foster v. California, 1969, 394 U.S. 440, 441, 89 S.Ct. 1127, 22 L.Ed.2d 402 (identification of defendant only after third viewing) with Kirby v. Illinois, *supra*, 406 U.S. at 684, 92 S.Ct. 1877, 32 L.Ed. 2d 411. On these facts we conclude that the show-up was not "unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby v. Illinois, *supra*, at 691, 92 S.Ct. at 1883.[5]

■ Furthermore, while the question is not without some difficulty, if we had to decide the issue, we would rule that, if there were any error, it was harmless beyond a reasonable doubt on these facts. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The robber wore highly distinctive clothes which were readily identifiable to the witnesses. The defendant ran

---

4. While the time lag was contested in the state courts, the petitioner's counsel conceded in this court that only approximately twenty minutes elapsed between the robbery and the show-up.

5. The petitioner points out that the First Circuit in Allen v. Moore, 1 Cir. 1972, 453 F.2d 970, suggested that suggestive identifications might not be approved in the future. That case preceded Kirby v. Illinois, *supra*. Moreover, Judge Aldrich said that future approvals "in like circumstances" was open to question. *Allen, supra*, 453 F.2d at 975. The circumstances here were materially different.

when he was chased by a police officer. He attempted to continue his flight when the police officer, only a few feet away, identified himself and held a gun directly pointed at him. Even with the police officer's revolver pressed against his temple he continued his attempt to flee and reached for a gun under his jacket. In his pocket in a separate roll was exactly the amount of money shown by a computerized accounting system to be missing from the loan office. The defendant left the building in which the loan office that had been robbed was located within minutes of the robbery. When arrested he also had in his pockets two handkerchiefs, one of which was folded in the shape of a mask with the ends still wrinkled as if they had recently been tied. Unless the police had been waiting outside the door to the loan office to arrest the robber with gun and money in hand, it is hard to conceive of what further proof could be adduced.

In view of our conclusions that the show-up was not unconstitutionally suggestive and that on the facts of this case any error was harmless beyond a reasonable doubt, it is ordered that the petition be dismissed.