Ralph W. WATSON. Jr., Defendant below,
Appellant,

v.

STATE of Delaware, Plaintiff below,
Appellee.

Supreme Court of Delaware.

Submitted Sept. 8, 1975.

Decided Dec. 10, 1975.

Roger W. Arrington and Arlen B. Mekler, Asst. Public Defenders, Wilmington, for defendant below, appellant.

James S. Green, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice.

The defendant appeals his conviction of first degree robbery [11 Del.C. § 832(2)] on the ground that his in-court identification by the victim was fatally tainted by evidence of an unnecessarily suggestive out-of-court confrontation and identification.

## I.

On the day of the robbery, Betty Ann Wilson finished work at 2:00 a. m. She and Ethel Felton decided to visit a girl friend, Doris. They arrived at Doris'

house at approximately 3:10 a. m. Almost immediately, Miss Wilson noticed a man on the sidewalk who proceeded to walk onto the porch and sit on the bannister separating 804 and 806 VanBuren Street. Unsure as to which of the two houses Doris lived in, Miss Felton inquired of the man seated on the bannister, who replied that he didn't know. Misses Wilson and Felton then knocked at the door of 804 after seeing a man and woman in the window. Upon ascertaining that Doris did not reside there, the two women went to 806. As Miss Wilson stepped over the bannister she noticed that the man had moved from it, opened the door to 806 and stood in the vestibule. Thinking that Doris had opened the door, she looked around the man and asked "Doris?" The man, who was facing the two women, was illuminated by lights coming from the hallway and living room behind him. He told the women to come in, saying that Doris "has an apartment upstairs". Since Miss Wilson knew Doris occupied an entire house, and not merely an apartment, she became suspicious, noting that "I took a very good look at him because I felt like he was there to do something around her home and I thought if anything happened during the night, I could describe the man to her [Doris] that was at her door * * *." [1] She then walked to her car with Miss Felton. The latter saw the man run off the porch, taking a gun from his shirt. Before Miss Wilson could start her car, the man put his hand on her arm, stuck the gun inside the car's open window, and demanded the women's pocketbooks. After ascertaining that only Miss Wilson had money with her, the man took her purse and fled.

Miss Wilson then drove toward the downtown area of Wilmington seeking a policeman. She told the officer, whom she found at 8th and Market Streets, of the robbery, and described the individual as having a slight build, "long" face, medium length hair, dark complexion, and wearing low-hung dark pants with a "brown shirt with big white flowers". After her description of the robber was radioed in, Miss Wilson sat in the back of a police car for approximately ten minutes when she overheard a radio report that "a suspicious character that [she] had described" was in custody. Shortly thereafter, the defendant was brought to the police car in which Miss Wilson was waiting, whereupon Miss Wilson, after walking up close "to take a good look at him", [2] identified him as her robber. Miss Felton also commented: "That is darn sure the shirt". The confrontation took place approximately 30 minutes after the robbery. Defendant was thereupon arrested.

At the trial, Miss Wilson testified concerning the show-up identification of the defendant above described, and again identified him as the man who had robbed her.

## II.

Defendant argues that the show-up identification was the product of a confrontation so "unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law". *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). He asserts that Miss Wilson's overhearing the police radio report and then having the defendant "presented to her surrounded by uniformed policemen made it all but inevitable that Miss Wilson would identify [him] as the robber whether or not he was in fact 'the man'." Further, he contends, his identification by Miss Felton simultaneously compounded

---

1. According to Miss Wilson, she spoke with the man "for about four or five minutes" at a distance of two and one-half feet.

2. Because her glasses were stolen, Miss Wilson, who suffers from astigmatism, went up close to the defendant to assure herself she would not identify the wrong man. She testified repeatedly that her vision was unblurred during all encounters with the robber and defendant.

the suggestiveness of the confrontation by "reaffirming or possibly convincing Miss Wilson of her identification." We disagree.

The confrontation, conducted by the police within minutes after the offense and practically "on the scene", was not unnecessarily suggestive. Any suggestiveness in this situation was necessary to proper police action.[3]

The confrontation and identification were an immediate product of the offense and defendant's apprehension. By analogy, they were inseparably part of the offense's *res gestae* and, absent any expressly suggestive conduct by the police, the identification was necessary and permissible. Compare *Russell v. United States,* D.C.Cir., 133 U.S.App.D.C. 77, 408 F.2d 1280, *cert. denied,* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed. 2d 245 (1969); *Asber v. State,* Del.Supr., 253 A.2d 204 (1969). The overhearing by Miss Wilson of the police radio report that a "suspicious character" who fit her description had been detained did not constitute undue influence. Nor does the defendant's suggestion that his being surrounded by uniformed officers persuade us that Miss Wilson's will was unduly influenced by the police. Indeed, practicalities inherent in this type of situation suggest that an immediate· on-the-scene confrontation between victim and suspect is essential both to law enforcement and to fairness toward innocent suspects. See *Stanley v. Cox,* 4th Cir., 486 F.2d 48 (1973); *United States v. Gaines,* 3rd Cir., 450 F.2d 186 (1971); *United States v. Washington,* D.C.Cir., 144 U.S. App.D.C. 338, 447 F.2d 308 (1970); *United States v. Wilson,* D.C.Cir., 140 U.S.App. D.C. 331, 435 F.2d 403 (1970); *Russell v. United States, supra,* 408 F.2d 1280; *Bates*

*v. United States,* D.C.Cir., 132 U.S.App. D.C. 36, 405 F.2d 1104 (1968). Essential benefits thus accrue both to the police, who should not lose valuable time in looking for the offender if an apprehended suspect goes unidentified, and the innocent suspect, who should not suffer undue custody awaiting police station identification. More importantly, prompt, yet fair, confrontations are reliable:

"[R]ecognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man." *Russell v. United States, supra,* 408 F.2d at 1284.

Accordingly, we hold that, absent unnecessary and unfair police suggestion, prompt on-the-scene confrontations, *per se,* are not so unnecessarily suggestive as to constitute violations of due process rights. No such unnecessary and unfair police suggestion appears here.

The defendant contends that a "properly arranged line-up" at the police station was the only way to avoid unnecessary sugges-

---

3. Compare the Supreme Court's refusal to extend the Sixth Amendment's right to counsel to pre-arrest identifications. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972). Supportive of this approach is the desirability of promoting prompt con-

frontations as a viable police procedure. See *Grano, Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent,* 72 Mich.L.Rev. 717, 742 (1974).

tiveness in this case. We find the suggestion manifestly impractical and unacceptable under circumstances where, as here, the confrontation is prompt, practically on-the-scene, and of a "res gestae" nature. None of the cases cited by the defendant,[4] nor any other brought to our attention, stands for the proposition that a show-up in lieu of a line-up automatically violates the *Stovall* rule.

■ Defendant further contends that the simultaneous show-up identification by Misses Wilson and Felton "compound[ed] the unnecessarily suggestive nature of this show-up." We are of the opinion that the simultaneous identification in the instant case did not make the situation impermissibly suggestive. Miss Wilson's identification was unequivocal and occurred before Miss Felton's comment regarding defendant's distinctive shirt. The simultaneous identification was a natural development

under all of the circumstances and was not "arranged" by the police.

### III.

Having concluded that the confrontation here was not "unnecessarily suggestive", we do not reach the question of whether the in-court identification had "independent origins", *Brown v. State,* Del.Supr., 329 A.2d 153 (1974), or whether there was a "likelihood of irreperable misidentification" under the tests and guidelines of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See *Clark v. State,* Del.Supr., 344 A.2d 231 (1975). Accordingly, the defendant's contention that the "likelihood-of-misidentification" rule of *Neil v. Biggers* does not apply to post-*Stovall* cases,[5] and the contrariety of judicial opinion that has arisen on that question,[6] must await another case and another day. See *Clark v. State,* 344 A.2d at 236, n. 4.

\*    \*    \*    \*    \*    \*

Affirmed.

4. *Russell v. United States, supra,* 408 F.2d 1280; *Jenkins v. State,* Del.Supr., 281 A.2d 148 (1971); *Miller v. State,* Del.Supr., 224 A.2d 592 (1966); *State v. Cooper,* Ohio Com.Pl., 14 Ohio Misc. 173, 237 N.E.2d 653 (1968).

5. *Stovall v. Denno, supra,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 was decided on June 12, 1967. *Stovall* focused on the suggestiveness of the confrontation and identification, whereas *Biggers* emphasized the reliability of the identification. The dilemma as to the scope of *Biggers* arises because of the Court's statement:
   "What is less clear from our cases is whether, as intimated by the District Court, unnecessary suggestiveness alone requires the exclusion of evidence. While we are inclined to agree with the courts below that the police did not exhaust all possibilities in seeking persons physically comparable to respondent, we do not think that the evidence must therefore be excluded. The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable

   one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process. \* \* \*. Such a rule would have no place in the present case, since both the confrontation and trial preceded *Stovall v. Denno,* supra, when we first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury." 409 U.S. at 198–99, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

6. Cases specifically holding *Biggers* applicable to post-*Stovall* identifications include *United States ex rel. Kirby v. Sturges,* 7th Cir., 510 F.2d 397, *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).; *United States ex rel. Pierce v. Cannon,* 7th Cir., 508 F.2d 197 (1974), and *Dobson v. State,* Md.Sp.App., 24 Md.App. 644, 335 A. 2d 124 (1975). Decisions espousing the opposite view are *Smith v. Coiner,* 4th Cir., 473 F.2d 877, *cert. denied,* 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 743 (1973); *Thomas v. Leeke,* D.S.C., 393 F.Supp. 282 (1975), and *Flaherty v. Vinzant,* D.Mass., 386 F.Supp. 1170 (1974).