Lawrence **SMITH, Appellant,**

v.

**STATE of Delaware, Appellee.**

Supreme Court of Delaware.

Argued June 9, 1975.

Decided July 21, 1975.

---

Henry A. Wise, Jr., of Wise, Lindh & Mekler, Wilmington, for appellant.

Edward C. Pankowski, Jr., Deputy Atty. Gen., Wilmington, for appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

PER CURIAM:

Defendant appeals from his conviction in Superior Court of arson in the first degree and possession of explosive devices. It is contended that defendant's in-court identification by a 14 year old eye witness was fatally tainted by pre-trial confrontations asserted to be so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate the defendant's due process rights.

I

The witness was standing at the front door of the screened porch of his home at approximately 9:45 p. m. in the evening when he saw a man get out of the passenger side of a two-door dark green car parked under a street light. The man had a bottle in his right hand, ignited it, ran to a house approximately seventy feet from the witness' home, put his foot on the steps of the house and threw the flaming bottle in a window causing a fire. The man ran back to the car and he and his companion drove away. The witness described the man to the investigating officer as a black male, about 5 feet 11 inches tall, wearing a dark blue jacket and a pair of dark pants. He further identified the car as being a Camero with a white rim around the license plate.

Mrs. Terry Smith, the occupant of the house into which the lighted bottle was thrown, indicated to the investigating officer and fireman that her husband fit the description of the suspect and stated, additionally, that her husband's girl friend owned an automobile similar to that described by the witness.

Within minutes, after the offense, the officers took the witness to the address given by Mrs. Smith as the residence of her husband. The witness there immediately recognized a dark green Camero as the car used during the commission of the crimes. The witness then identified Mrs. Smith's husband, the defendant, as the offender, without seeing his face, by the sneakers he was wearing and by his hair. In his own words at trial he said: "I recognized him as soon as I seen him."

Two days later the witness was taken to the police station for a line-up identification. He again identified defendant among six black men, all wearing white "T" shirts, all with mustaches, and all with black hair. This time, which is the first time he had seen the man's face since the night of the offense, he pointed out the defendant without any suggestiveness on the part of anyone.

At trial the witness made an in-court identification. He enlarged upon the out-

of-court identification by specifically describing the dark pants and jacket as "wrangler" blue jeans; by stating that on the night of the offense the defendant was wearing neither a hat nor glasses; that when he saw him under the street light his hair was uncombed; that he wore a thin mustache, and that he had sideburns.

## II

Even if we were to assume impermissible out-of-court suggestiveness in the witness' identification of defendant at the initial confrontation, the "totality of the circumstances" test and the "independent origin" of the in-court identification lead us to conclude that such suggestiveness did not give "rise to a very substantial likelihood of irreparable misidentification of the defendant." See *United States v. O'Conner*, 282 F.Supp. 963, 965 (1968); *Brown v. State*, Del.Supr., 329 A.2d 153, 155 (1974).

Affirmed.