**Willie J. HARRIS, a/k/a Cleveland Harris, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 16, 1975.

Decided Dec. 30, 1975.

Richard L. Dahlen, Asst. Public Defender, Wilmington, for defendant below, appellant.

Edward C. Pankowski, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

Defendant appeals his conviction of second degree robbery (11 Del.C. § 831) and felonious theft (11 Del.C. § 841) on the ground that evidence of his pre-trial "show-up" identification by the victim was tainted by an unnecessarily suggestive confrontation, resulting in denial of due process of law.[1]

I.

At approximately 10:00 p. m. on the night in question, a sandwich shop was robbed by a lone man. After entering the shop and ordering a sandwich, he placed his left hand in a paper bag and announced to Laura Ridler, one of the two girls on duty:. "This is a stick-up. Give me the money." When Ridler hesitated, he said: "I have a gun in here [the bag]." After Ridler filled a paper bag with money, she and her co-worker, Robin Bennett, were told to take the phone off the hook and lie down on the floor. The robber then left, and the girls immediately called the police.[2]

---

1. Although an in-court identification was made in this case, it is not challenged on appeal. Contrast *Brown v. State*, Del.Supr., 329 A.2d 153 (1974). Accordingly, this opinion is addressed to the out-of-court identification only.

2. In all, the robbery took two to three minutes. Ridler was directly across the counter from the robber; Bennett was approximately seven feet away.

They described the robber as black, about 5'7" tall and weighing approximately 140 pounds, wearing black pants, light shirt, and a white knit ski cap covering his hair and half his forehead.

Moments later, the above description was broadcast to police units. A police officer noticed a black male—the defendant—bicycling southward a short distance from the shop. Determining that the man had on dark trousers and a light top,[3] the officer placed him under two hour detention and took him to the scene of the robbery.[4] They arrived at 10:45 p. m.

In the meantime, other police had arrived at the shop, and were questioning the two waitresses. Being nervous and upset, Bennett had fainted, and was resting when the defendant arrived. Handcuffed, he was escorted in and shown to the two victims. Neither could made an identification.

The defendant was then taken outside. The chief police officer at the scene continued discussing the events surrounding the robbery with the victims for about ten minutes. When asked whether he discussed the suspect, he responded:

"I might have been. I don't particularly recall at that point. I might have been asking her about the description of the individual. I could have. I specifically don't recall."

When Ridler suggested to the police that she might be able to identify the defendant if "she heard him talk", he was again brought in and, without objecting, uttered words similar to those used by the robber. Ridler, nevertheless, was still too uncertain to make a positive identification. However, at this point, Bennett identified defendant as the robber. At a pre-trial hear-

ing, defendant moved to suppress evidence of the identification at the second show-up, but his motion was denied.

## II.

Defendant challenges the introduction of evidence concerning his identification by Bennett as the product of repeated, "exceptionally suggestive" confrontations so conducive to mistaken identification that he was denied due process of law. He contends that the recurrent, simultaneous viewing by the victims coerced an identification. Further, he maintains, unnecessary suggestiveness alone violates due process, despite the conceivable reliability of the identification.

■■■ For testimony concerning an out-of-court identification, the essential consideration is whether the confrontation was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410 (1972); *Clark v. State,* Del.Supr., 344 A.2d 231 (1975). As we noted in *Clark, supra,* 344 A.2d at 237: "There are two determinative questions before us under the prescribed tests and guidelines: (1) Was the confrontation 'unnecessarily suggestive'? and (2) was there a 'likelihood of misidentification'?" Although "[s]how-ups generally are inherently suspect and widely condemned", *Id.,* they are not *per se* unnecessarily suggestive. *Neil v. Biggers, supra,* 409 U.S. at 198, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

■■■ In this instance, the first show-up was not unnecessarily suggestive, being an "immediate product of the offense and defendant's apprehension." *Watson v. State,* Del.Supr., 349 A.2d 738, 740 (1975). It was

---

3. Defendant was wearing blue jeans and a blue and white sweatshirt cut off at the shoulders. There was no evidence of a hat.

4. The officer testified that he later returned to the area where defendant was stopped and found a paper bag containing $218 in paper

currency. In addition, he testified that identifying papers bearing the name "Cleveland S. Harris" were found the next day in the same general location. At trial, the defendant testified that the cards were taken from him the night of his detention and arrest.

a "res gestae", or on-the-scene, confrontation conducted as soon as possible after the offense. For the reasons stated in *Watson*, "practicalities inherent in this type of situation suggest that an immediate on-the-scene confrontation between victim and suspect is essential both to law enforcement and to fairness toward innocent suspects alike." *Id.*[5]

■ However, we hold that the second show-up was unnecessarily and impermissibly suggestive. The victims had failed to identify the defendant just 10 minutes earlier and it is undenied that the police discussed the identification with the victims in the interim. Considering Bennett's youth (16 years of age), highly distressed state (she had fainted and admitted to being "very nervous"), and the probable influence of the undenied intervening discussion by the police, we find the second confrontation's unnecessary suggestiveness inescapable.

### III.

■ Defendant argues that finding the second confrontation unnecessarily suggestive requires, *per se*, the exclusion of evidence regarding the confrontation. Although, as indicated below, there is a line of authority supporting such a strict deterrent rule, we disagree and hold that, given an unnecessarily suggestive confrontation, the determining factor is the reliability of the identification, and not solely the suggestiveness of the confrontation.

The contrariety of judicial opinion in the matter originates with *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There, the Supreme Court analyzed identification testimony by stressing the procedure—or means—by which the testimony regarding identification is gathered. The rule adopted was not strictly exclusionary, but dependent "on the totality of the circumstances surrounding [the confrontation] * * *". *Id.*, 388 U.S. at 302, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206, *i. e.*, whether sufficient justification existed for use of a show-up identification instead of the more reliable identification procedure of a well-organized, fairly presented line-up.[6]

In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the now recurrent emphasis on the reliability of the end result—the identification—had its inception. A determinative factor was the Court's belief "that the identification of Simmons was correct * * *." 390 U.S. at 385, 88 S.Ct. at 972, 19 L.Ed.2d at 1254. Similarly, in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Supreme Court found the identification's reliability a significant fac-

---

5. We pause to note, however, our concern with any police-arranged simultaneous viewing of one suspect by more than one victim. We agree with the statement in *United States v. Wilson*, D.C.Cir., 140 U.S.App.D.C. 331, 435 F.2d 403, 405 (1970) that:

> "[i]f it is feasible for each witness, victim or otherwise to stand alone when asked to make the identification, aye or nay, this is the course that should be followed. While the benefit of a prompt on-the-scene confrontation makes acceptable the necessary suggestiveness of presentation of a single subject (a 'show-up'), there is ordinarily no need for the additional element of suggestiveness of identification made at the same time by two or more witnesses in each other's company."

6. For a listing of many of the leading articles, scholars, and judges advocating this approach, see *United States ex rel. Kirby v. Sturges*, 7th Cir., 510 F.2d 397; 405–06 nn. 23–26, *cert. denied*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

Other works on the general topic include: Wall, *Eye-Witness Identification in Criminal Cases* (1965); Pulaski, *Neil v. Biggers: The Supreme Court Dismantles the Wade Trilogy's Due Process Protection*, 26 Stan.L.Rev. 1097 (1974); Levine & Tapp, *The Psychology of Criminal Identification: The Gap From Wade to Kirby*, 121 U.Pa.L.Rev. 1079 (1973); Annotation, *Validity, Under Federal Constitution, of Police Lineup or Showup Procedures—Supreme Court Cases*, 34 L.Ed. 2d 839 (1973); Annotation, *Admissibility of Evidence of Showup Identification as Affected by Allegedly Suggestive Showup Procedures*, 39 A.L.R.3d 791 (1971).

tor in its decision. 399 U.S. at 5–6, 90 S.Ct. at 2001, 26 L.Ed.2d at 394–95. This theme was underscored explicitly in *Neil v. Biggers, supra,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, where the Court, in enunciating the factors "to be considered in evaluating the likelihood of misidentification",[7] held that the "central question [was] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. *See Clark v. State, supra,* 344 A.2d at 236.

However, in each of the above three cases, arrest and identification occurred prior to the decision date of *Stovall,* which was not retroactive. The question thus became whether *Biggers* signaled a departure from *Stovall* to be applied in all confrontation cases, or whether it was limited solely to pre-*Stovall* identifications. Language in *Biggers*[8] not only did not resolve this delemma, but enhanced it. In *Clark v. State, supra,* 344 A.2d at 236 n. 4, we noted the problem *Biggers* presents, but found the issue inapposite in that instance.

The leading case holding that the *Biggers* result-oriented approach applies only to pre-*Stovall* cases is *Smith v. Coiner,* 4th Cir., 473 F.2d 877, *cert. denied,* 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 743 (1973). The Court's rationale was that:

"[i]n post-*Stovall* cases, '[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.' * * * The shift in emphasis from unnecessarily suggestive confrontations (post-*Stovall* cases) to reliability of identification (pre-*Stovall* cases) is explained by the need, once *Stovall* was decided, 'to deter the police from using a less reliable procedure where a more reliable one may be available.' "

473 F.2d at 882, quoting from *Neil v. Biggers, supra,* 409 U.S. at 198, 93 S.Ct. at 382, 34 L.Ed.2d at 411. Few cases have followed the *Coiner* approach.[9]

Conversely, other courts have found within *Biggers* constitutional guidelines applicable to post-*Stovall* cases as well. *United States ex rel. Kirby v. Sturges,* 7th Cir., 510 F.2d 397, *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975); *United States ex rel. Pierce v. Cannon,* 7th Cir., 508 F.2d 197 (1974); *Dobson v. State,* Md.Sp.App., 24 Md.App. 644, 335 A. 2d 124 (1975). Further, many courts have applied *Biggers* to post-*Stovall* identifications without comment.[10]

---

7. These factors include:
"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

8. "What is less clear from our cases is whether, as intimated by the District Court, unnecessary suggestiveness alone requires the exclusion of evidence. While we are inclined to agree with the courts below that the police did not exhaust all possibilities in seeking persons physically comparable to respondent, we do not think that the evidence must therefore be excluded. The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police

from using a less reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process. * * * Such a rule would have no place in the present case, since both the confrontation and the trial preceded *Stovall v. Denno, supra,* when we first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury." 409 U.S. at 198–199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

9. *But see Thomas v. Leeke,* D.S.C., 393 F. Supp. 282 (1975); *Flaherty v. Vinzant,* D. Mass., 386 F.Supp. 1170 (1974).

10. See, *e. g., Government of the Virgin Islands v. Navarro,* 3d Cir., 513 F.2d 11, *cert. denied,* 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975); *Holland v. Perini,* 6th

The rationale for this approach, with which we agree, was well stated in *Kirby, supra,* 510 F.2d at 408:

"Since the constitutional error that the rule is intended to avoid is an unfair trial, rather than merely an unfair identification, before an inflexible exclusionary rule is adopted it is appropriate to consider less drastic methods of avoiding the danger of unfairness. It is important to remember that identification testimony normally has *some* probative significance even if the identification procedure was unnecessarily suggestive. The risk of unfairness stems from the danger that juries may attach more weight to the evidence than it actually warrants. That danger can be minimized by appropriate cautionary instructions. A rule which invariably required the exclusion of evidence, no matter how slight the danger that the particular trial was actually unfair, would be at odds with our well-settled interpretation of the due process clause as providing 'an elastic, flexible standard which varies with the attendant circumstances.' *LaBatt v. Twomey,* 513 F.2d 641, at 645 (7th Cir. 1975)."

Accordingly, we hold that the *Biggers'* guidelines are applicable in this post-*Stovall* case.

■ We conclude thereunder that the defendant's due process rights were violated. Bennett and Ridler observed the defendant unobstructively from the moment he entered the shop. With their attention obviously concentrated on his features, they were still unable to identify him when he was presented to them forty-five minutes after the robbery. Bennett's identification of the defendant on the night of the robbery was equivocal; the first confrontation failed to produce even a tentative identification; this despite the fact that the seemingly most distinctive characteristic of the robber was a "rather rough, bumpy from pockmarks" face.

Finally, the witnesses' description of the robber telephoned to the police immediately after the robbery was somewhat at odds with the defendant's appearance. Bennett described the robber as wearing black pants; in fact, he wore blue jeans. In addition, his "light shirt" was in fact a two-tone sweatshirt made distinctive by the fact it was cut off at the shoulders. Moreover, no white knit ski cap was found on the defendant or near the area where he was detained.

In sum, there was admitted in this case testimony concerning a seemingly crucial aspect of the State's case—Bennett's on-the-scene identification—which, upon weighing all the applicable factors, persuades us of the substantial likelihood of its unreliability. Because we cannot say that the error in admitting evidence of the out-of-court identification was harmless beyond a reasonable doubt, see *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), the defendant's conviction cannot stand.

\* \* \* \* \* \*

Reversed.

Cir., 512 F.2d 99 (1975); *United States v. Boston,* 2d Cir., 508 F.2d 1171 (1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975); *United States v. Roby,* 10th Cir., 499 F.2d 151 (1974); *Haberstroh v. Montanye,* 2d Cir., 493 F.2d 483 (1974); *United States ex rel. Cannon v. Montanye,* 2d Cir., 486 F.2d 263 (1973), *cert. denied,* 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974); *United States v. Evans,* 2d Cir., 484 F.2d 1178 (1973); *United States v. Hurt,* D.C.Cir., 155 U.S.App.D.C. 217, 476 F.2d 1164 (1973); *Lebron v. United States Secretary of the Air Force,* S.D.N.Y., 392 F.Supp. 219 (1975); *Moore v. Robinson,* W.D.Va., 391 F.Supp. 1061 (1975); *United States ex rel. Richardson v. Rundle,* E.D.Pa., 382 F.Supp. 633 (1974); *aff'd mem.,* 511 F.2d 1396 (1975); *Marshall v. United States,* D.C.App., 340 A.2d 805 (1975).

Although not overruling *Coiner,* the 4th Circuit Court of Appeals subsequently applied the *Biggers'* factors to a post-*Stovall* identification. *Stanley v. Cox,* 4th Cir., 486 F.2d 48, *cert. denied,* 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1973). See *United States ex rel Pierce v. Cannon, supra,* 508 F.2d at 204 n. 11.