**Raymond SMITH, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 17, 1975.

Decided Feb. 12, 1976.

Joseph A. Hurley, Sullivan, Hurley, Farnan & Falasca, Wilmington, for defendant below, appellant.

Eugene M. Hall, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice:

Defendant was convicted of felonious theft (11 Del.C. § 841). On appeal, he maintains his conviction was the product of an unnecessarily suggestive out-of-court show-up confrontation, and that a critical element of his offense was established in violation of the Best Evidence Rule.

## I.

While returning from lunch, Charles Gallagher, an employee of an appliance store, noticed a ."very conspicuous" red customized Cadillac El Dorado parked in front of the store. He observed a black male, wearing "a multicolored shirt with a greenish background" and a white hat, carrying from the store, and putting into the Cadillac, a carton presumably containing an air conditioning unit.[1] Gallagher entered the store and noticed that an air conditioner was missing from the store's floor display. After verifying that no unit had been sold that day, he phoned the police. While Gallagher was on the phone, he and other employees noticed the same Cadillac parked in front of another store nearby. One employee, Warren Cosgrove, drove toward the car in his truck in an attempt to block its escape. When Cosgrove got out of his truck, he had to dodge in order to avoid being struck by the rapidly exiting Cadillac; nevertheless, he testified that he saw the face of the individual driving the car, as well as his distinctive attire. Another employee, Steven Rosiak, also approached the fleeing car and claimed to have had a good view of its driver.

Shortly afterwards, the police arrived. The defendant was apprehended about a mile from the scene. He was wearing a multicolored shirt with a green background and was at the wheel of the red Cadillac described by the store's employees.

Upon return to the scene, the arresting officer discussed with the three employees the description of the man they had seen previously. Then and there, the defendant was identified first by Gallagher as the man he had seen carrying the air conditioner carton from the store; and Cosgrove and Rosiak identified him as the driver of the Cadillac they had sought to detain. They made their identifications at the scene in the presence of each other, about 20–25 minutes after the offense.

At trial, all three witnesses testified concerning the out-of-court confrontation and identification, and each made a separate in-court identification.

## II.

Defendant contends that the multiple on-the-scene confrontation and identification by the three witnesses simultaneously presented "a very tangible and graphic suggestiveness which would taint the objectivity of even the most conscientious of men". Consequently, he challenges on appeal their in-court identifications as tainted and violative of due process.

On-the-scene show-ups are not unnecessarily, and therefore impermissibly, suggestive *per se* under due process tests. *Watson v. State,* Del.Supr., 349 A.2d 738 (1975).

In *Watson,* we stated that if show-ups are an immediate product of the offense and defendant's apprehension, "[b]y analogy, they [are] inseparably part of the offense's *res gestae,* and absent any expressly suggestive conduct by the police, the iden-

---

1. Although Gallagher could not see the contents of the box, he did recount observing that the carton was carried by a handle which, according to design, could only be from an air conditioner contained within.

tification was necessary and permissible. * * * Essential benefits * * * accrue both to the police, who should not lose valuable time in looking for the offender if an apprehended suspect goes unidentified, and the innocent suspect, who should not suffer undue custody awaiting police station identification. More importantly, prompt, yet fair, confrontations are reliable * * *." 349 A.2d at 740.

However, in weighing the suggestiveness of the on-the-scene show-up involved in *Harris v. State,* Del.Supr., 350 A.2d 768 (1975), we noted "our concern with any police-arranged simultaneous viewing of one suspect by more than one victim", 350 A.2d at 771 n. 5, and quoted with approval from *United States v. Wilson,* D.C.Cir., 140 U.S.App.D.C. 331, 435 F.2d 403, 405 (1970), as follows:

> "If it is feasible for each witness, victim or otherwise, to stand alone when asked to make the identification, aye [or] nay, this is the course that should be followed. While the benefit of a prompt on-the-scene confrontation makes acceptable the necessary suggestiveness of presentation of a single subject (a 'show-up'), there is ordinarily no need for the additional element of suggestiveness of identification made at the same time by two or more witnesses in each other's company."

The question in the instant case, therefore, is whether the show-up was made unnecessarily suggestive by the multiple confrontation and the conduct of the police officer.

Here, an individual viewing by each identifying witness was feasible and the pre-identification discussion by the police officer is questionable. We hold that the multiple confrontation and identification conducted here, immediately following a discussion with the arresting officer concerning the description of the man sought, rendered the out-of-court identification unnecessarily suggestive.

However, for the reasons discussed at length in *Harris,*[2] the ultimate consideration is whether, under the totality of the circumstances, the in-court identification was reliable, despite the unnecessary suggestiveness of the show-up. The factors comprising the totality of such circumstances include:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

In the instant case, although the opportunity to see the criminal at the time of the theft was fleeting, each of the witnesses was highly attentive. Gallagher was struck both by the conspicuousness of the Cadillac and the individual walking toward it with the air conditioner carton. Cosgrove and Rosiak had attempted to detain the driver of the Cadillac as he fled, and testified that they succeeded in obtaining a good view him at close range. In addition, the descriptions given by them at the scene as to the car ("red Cadillac El Dorado with [a] fancy front end, white vinyl top with a crown in the rear window, plus [the] tag number ["ZX"]) and its driver (general physical characteristics and attire) accurately depicted both the vehicle and its occupant stopped within minutes of the theft in the same area. *Cf. Smith v. State,* Del.Supr., 343 A.2d 606 (1975). Finally, each out-of-court and in-court identification was sufficiently certain and unequivocal.

Accordingly, although unnecessary suggestiveness tainted the out-of-court con-

---

2. Although *Harris* was limited solely to testimony concerning the out-of-court identification there challenged, its rationale is equally applicable to in-court identifications.

frontation procedures in this case, we cannot say that the in-court identifications were so unreliable as to require reversal.

## III.

Defendant argues, additionally, that the State's case included Gallagher's testimony concerning the lack of an invoice for the sale of an air conditioner on the day of the crime. In effect, it is maintained, Gallagher was testifying as to the contents of the store's invoices; consequently, the Best Evidence Rule required their production. In *Day v. State*, Del. Supr., 297 A.2d 50, 51 (1972), this Court noted that the Best Evidence Rule is pertinent when seeking to prove the material terms of a writing. Here, the evidence concerned the lack of a writing, not its contents. The Best Evidence Rule is inapposite.

\*    \*    \*    \*    \*    \*

Affirmed.