UNITED STATES of America ex rel.
Raymond R. SMITH, Petitioner,

v.

Walter W. REDMAN, Superintendent of the Delaware Correctional Center, and Paul Keve, Director of the Division of Adult Corrections, Respondents.

Civ. A. No. 76–120.

United States District Court,
D. Delaware.

May 27, 1976.

Joseph A. Hurley, of Sullivan, Hurley, Farnan & Falasca, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondents.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Raymond R. Smith, a state prisoner, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims that his Delaware Superior Court conviction for theft was premised on a constitutionally impermissible simultaneous "showup" before three witnesses. The Delaware Supreme Court rejected this same contention in *Smith v. State,* Del.Supr., 352 A.2d 765 (1976), and, accordingly, petitioner has exhausted his available state remedies. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

While returning from lunch on August 3, 1974, Charles F. Gallagher, an employee of the Goodyear Tire & Rubber Company retail appliance store located at the Tri-State Mall, Claymont, Delaware, observed a distinctive, red customized Cadillac El Dorado parked in front of the store. (5–6)[1] Gallagher then noticed a black male leaving the store with what he recognized to be a box, the usual packing for a portable air conditioner. (6, 55) The black male, who was wearing a multi-colored shirt and a white hat (8), then placed the box in the

Cadillac. (8) Gallagher also noted the Cadillac's two digit vanity license plate. (9) After determining that an air conditioner was missing from the store, Gallagher called the police. (11–12) A few minutes later, Gallagher saw the Cadillac parked in front of Silo's store in the Tri-State Mall perhaps 100 yards away. (12–13) Warren Cosgrove, another employee of the store, proceeded in a truck toward the Cadillac in an effort to block its escape. (63–64) After stopping his vehicle, Cosgrove approached the front of the driver's side of the Cadillac, but the driver of the Cadillac attempted to flee forcing Cosgrove to jump aside in order to avoid being hit. (63, 83, 89) However, Cosgrove was able to view the driver and noticed that he was wearing a multi-colored shirt and a white hat. (65) A third employee, Steven Rosiak, observed Cosgrove's efforts to question the driver of the Cadillac. (89)

Shortly after the Cadillac left the area, Officer David MacDonald of the New Castle County Police who was familiar with petitioner and the unique automobile that he operated, arrived at the store and then proceeded after the Cadillac. (100) Upon his apprehension, petitioner[2] was returned by Officer MacDonald to the store where the theft had occurred fifteen to twenty minutes earlier. (104, 44) Officer MacDonald first interviewed the three witnesses to obtain a general description of the man who had apparently committed the theft. (105) Then, petitioner was shown to Gallagher, Cosgrove, and Rosiak. Based on petitioner's hair, coloration, height, weight, and clothing (23), Gallagher identified petitioner as the man who shortly before had left the store with an air conditioner. (44) Cosgrove and Rosiak, who were with Gallagher, immediately thereafter likewise identified the petitioner. (72, 78, 90)

■ The inquiry into whether identification procedures are so suggestive as to violate due process must focus on the "totality

---

1. Numbers in parentheses refer to the state trial transcript.

2. Petitioner was then wearing a multi-colored shirt and a white hat was found on the back seat of the Cadillac. (104, 106) Petitioner was apprehended about a mile and a half from the Tri-State Mall. (101–102)

of the circumstances" to determine the reliability of the in-court identification.[3]

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Government of the Virgin Islands v. Navarro,* 513 F.2d 11, 17 (C.A.3, 1975), *cert. denied,* 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975).[4]

Applying these factors, it appears that Gallagher had an unobstructed close-up daylight view of petitioner while walking from the store to his automobile. Cosgrove and Rosiak were also able to observe petitioner sitting in his car which was only a short distance from them.[5] Gallagher's attention was attracted by petitioner's unique car and by the air conditioner which he appeared to be carrying.[6] Cosgrove and Rosiak carefully viewed petitioner because they were trying to question him about the possible theft. Moreover, the witnesses' descriptions of petitioner did not differ in any material aspect from petitioner's appearance at the time of his arrest and his identification at the "showup" was both quick and unequivocal.[7] Finally the remarkably short period of time (15 to 20 minutes) between the theft and the "showup" ensures that each witness' recall was not dimmed by the passage of time.

■ Petitioner also contends that Gallagher's identification of him in the presence of Cosgrove and Rosiak influenced and tainted the identification by Cosgrove and Rosiak. Simultaneous viewing of one suspect by several witnesses should be avoided, *United States v. Wilson,* 140 U.S.App.D.C. 331, 435 F.2d 403, 405 (1970),[8] but, under the

---

3. The Delaware Supreme Court held "that the multiple confrontation and identification conducted here, immediately following a discussion with the arresting officer concerning the description of the man sought, rendered the out-of-court identification unnecessarily suggestive." *Smith v. State, supra,* 352 A.2d at 767.

4. Petitioner apparently concedes that the *Biggers* standards control disposition of his claim (Docket Item 5, p. 17), and, accordingly, it is not necessary for this Court to join the debate over whether *Biggers* applies to cases arising after *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *Compare Brathwaite v. Manson,* 527 F.2d 363 (C.A.2, 1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 1737, 48 L.Ed.2d 202, 44 U.S.L.W. 3624 (U.S. May 4, 1976) *with Harris v. State,* Del.Supr., 350 A.2d 768, 772–73 (1975). The Third Circuit has applied *Biggers* to a post-*Stovall* case. *Government of the Virgin Islands v. Navarro, supra. But see Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (C.A.3, 1976), at 1090 & n. 10a.

5. Rosiak's view was of sufficient duration to enable him to conclude that petitioner appeared to be "very nervous and shaking." (89)

6. That Gallagher was able to recall the license number of the Cadillac is an indication of the care with which he observed petitioner's activities.

7. The slight hesitancy exhibited by Gallagher in making his in-court identification of petitioner, as contrasted with the "showup" identification, can be attributed to changes in petitioner's dress and length of hair. (41, 45)

8. Petitioner's reliance on *Rudd v. State of Florida,* 343 F.Supp. 212, 220 (M.D.Fla.1972), *aff'd on other grounds,* 477 F.2d 805 (C.A.5, 1973), is misplaced. Although the Court of Appeals upheld the lower court's judgment, it commented upon the language relied on by petitioner:

"In connection with the display the District Court articulated an erroneous per se rule concerning simultaneous identifications by two or more witnesses. The court said: 'Thus, this Court holds that any simultaneous identification of a suspect by two or more witnesses in the presence of each other is so impermissibly suggestive as to amount to a denial of due process, and any subsequent in-court identifications must be subjected to a per se exclusionary rule.' Pretrial identification procedures should not be found impermissibly suggestive on the basis of rigid application of categorical rules. For example, indicia of reliability such as a witness' strong recollection from an independent untainted source may in some cases counteract the suggestiveness in certain identification procedures. Also, exigencies of efficient police work may occasionally justify identification procedures that in other contexts would be

circumstances of this case, the Court cannot conclude that the method employed for identification was constitutionally impermissible.

■ In sum, although the identification procedures may have been unnecessarily suggestive, the Court finds, in light of the criteria prescribed by *Neil v. Biggers, supra,* that the in-court identifications of petitioner clearly were reliable and, accordingly, did not result in a denial of due process.

An order denying the writ and dismissing the petition will be entered.

unnecessarily suggestive. Because of these and other variables spanning the range of human experience, courts have wisely counseled against determination of constitutionally impermissible suggestiveness on other than a case-by-case basis. . . . In short, due process inquiries into impermissible suggestiveness should be made in the absence of per se rules." 477 F.2d at 812.