## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                          |   |                     |
|--------------------------|---|---------------------|
| STATE OF DELAWARE        | ) |                     |
|                          | ) |                     |
| v.                       | ) | I.D. No. 1208012890 |
|                          | ) |                     |
| DERRICK SUDLER,          | ) |                     |
|                          | ) |                     |
| Defendant.               | ) |                     |
|                          | ) |                     |

Submitted: March 7, 2016
Decided: June 1, 2016

On Defendant's Amended Motion for Postconviction Relief.
**DENIED.**

# <u>ORDER</u>

Periann Doko, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Natalie, P.A., 3200 Concord Pike, Wilmington, Delaware, Attorney for Defendant.

COOCH, R.J.

This 1st day of June, 2016, upon consideration of Defendant's Amended Motion for Postconviction Relief, it appears to the Court that:

1.   On August 6, 2012, Elizabeth Greene saw a suspicious man standing on her front porch with her house keys in his hand. Greene was able to see the man through a large, clear-glass window in her front door. When Greene asked the man what he was doing on her porch, the man replied that she had left her house and car keys outside. Greene, however, stated that she thought she brought the keys inside and that there was no way to forget her keys in the lock, because there is no lock on the exterior glass door and she would have needed them to lock the

interior door from the inside. The man then placed the keys on the door and walked away. Greene called the Newark Police and reported the incident. When the police arrived at Greene's home, she described the man as a black male, wearing brown cargo shorts and a black shirt; about 5' 6"; 20–25 years old; 130–150 pounds; and having an "afro" haircut.

2. While the Newark Police were taking Greene's statement, they were alerted to a suspected burglary in progress down the street from Greene's home. The two witnesses to the alleged burglary were friends of the homeowner, Keenan Donnelly, who was not home at the time. The witnesses, Austin Bucci and Mark Scott, told police that they found the front door unlocked when they arrived at Donnelly's home. The witnesses walked into the residence and up to Donnelly's bedroom. When they walked into the bedroom they found the suspect crouching.

3. Bucci and Scott both stated that the suspect was a black male with an "afro-style haircut." They also described him as having medium complexion; standing about 5'7" tall; having a small amount of facial hair or a goatee; wearing a black shirt and tan cargo shorts with white gloves.

4. Newark Police suspected Defendant was the perpetrator in both incidents, primarily because of the consistent descriptions by the three witnesses of Defendant's distinctive hairstyle. On August 13, 2012, Greene received a lineup of photographs from the Newark Police via email. From the photograph lineup, she identified Defendant as the man who was on her porch. At trial, Greene again identified Defendant as the man on her porch.

5. On August 14, 2012, Austin Bucci met with the Newark Police and viewed a six-picture photograph lineup that included the Defendant's picture. Bucci, too, identified Defendant as the man he saw in the house the night of the alleged burglary. At trial, Bucci also identified the Defendant as the perpetrator. During the trial, Bucci again identified the Defendant. He expressed "one hundred percent" certainty that Defendant was the person he saw perpetrating the burglary.

2

6. The same day they met with Austin Bucci, the Newark Police met separately with Mark Scott and showed him a six-picture photograph lineup. He, too, stated he had no doubt Defendant was the man he saw inside Donnelly's home the night of the burglary. At the trial, Mark Scott identified Defendant as the man he had seen in the house, stating he was certain regarding the identification.

7. On March 1, 2013, following a three-day jury trial, Defendant was found guilty of one count of Burglary Second Degree and one count of Criminal Trespass First Degree. This Court granted the State's motion to declare Defendant a habitual offender pursuant to 11 *Del. C*. § 4124(a). Defendant received a sentence of eight years at Level V for the Burglary Second Degree conviction. For the conviction for the lesser included offense of Criminal Trespass Third Degree, Defendant received a sentence of one year at Level V suspended for sixth months at Level IV, followed by six months at Level III.

8. Defendant contends his trial counsel was ineffective for failing to file a Motion to Suppress the pre-trial identifications made by the witnesses, and for failing to attempt to suppress the identifications made during the trial proceedings. Defendant also contends that the trial court failed to give a sufficient jury instruction as to the eyewitness identifications and the jury's ability to rely on them as evidence that Defendant was the perpetrator of the burglary. Finally, Defendant contends that his trial counsel was ineffective for failing to challenge the admissibility of the identifications. Defendant requests an evidentiary hearing to more fully develop these claims.

The State of Delaware contends that trial counsel had the discretion to decide whether or not to file a Motion to Suppress the identifications and whether or not to argue the admissibility of the witness identifications. The State contends the decision to not argue those points was not ineffective because it was the product of defense counsel's discretion. The State also contends that more stringent jury instructions regarding pre-trial identifications were not required by Delaware law.

3

9.    Defendant's Amended Motion is controlled by Superior Court Criminal Rule 61.[1]  Before addressing the merits of this Amended Motion, the Court must address the procedural requirements.[2]

10.   A motion for postconviction relief can be procedurally barred for time limitations, successive motions, procedural defaults, and former adjudications.[3]  If a procedural bar exists, the Court will not consider the merits of the postconviction claim unless the Defendant can show that, pursuant to Rule 61(d)(2), the procedural bars are inapplicable.

11.   None of the aforementioned procedural bars apply to Sudler's Amended Motion.  Sudler's grounds for relief in this Amended Motion are based on the ineffective assistance of counsel he allegedly experienced with his prior counsel.  Therefore, he could not have brought this claim earlier and the procedural bars of Rule 61 are not applicable.

12.   Sudler's claims of ineffective assistance of counsel are reviewed under the United States Supreme Court decision in *Strickland v. Washington*.[4]  To determine whether a defendant was denied his Sixth Amendment right to effective assistance of counsel, *Strickland* established a two-prong test.[5]  First, a defendant must show that counsel's performance was deficient because the representation fell below an objective standard of reasonableness.[6]   Second, the defendant must show prejudice from the deficient performance.[7]  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[8] If the Defendant did

---

[1] Super. Ct. Crim. R. 61. The Amended Motion is governed by the most-recently amended Rule 61.
[2] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[3] Super. Ct. Crim. R. 61(i)(1)-(4).
[4] 466 U.S. 668 (1984).
[5] *Ploof v. Delaware*, 75 A.3d 811, 820 ("While the Sixth Amendment is not directly applicable to the State of Delaware, the United States Supreme Court has applied the Sixth Amendment to the states through the Fourteenth Amendment.").
[6] *Strickland*, 466 U.S. at 687–88.
[7] *Id.*
[8] *Id.*

4

not receive deficient representation, a court does not need to consider *Strickland*'s prejudice prong.

13. When evaluating whether counsel's representation fell below an objective standard of reasonableness, a court must "eliminate the 'distorting effects of hindsight' and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[9] To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[10] "A reasonable probability is a probability sufficient to undermine confidence in the outcome"; a lower standard than "more likely than not."[11] Finally, when reviewing trial counsel's performance under *Strickland*, there is "a strong presumption that the representation was professionally reasonable."[12]

14. Sudler's first argument claims his trial counsel was ineffective by failing to file a Motion to Suppress the pre-trial identifications made by the witnesses and for failing to file a Motion to Suppress the in-court identifications made by the witnesses. Sudler claims that the identifications made by the witnesses were under circumstances that were unduly suggestive and objectionable.[13] Based on the decision to not attempt to suppress the identifications, Sudler claims his due process rights were violated. The Court directed Sudler's trial counsel, John S. Edinger, Jr., to file an affidavit responding to the motion for postconviction relief. That affidavit reads in toto:

I, John S. Edinger, Jr., being duly sworn according to law, do hereby depose and say:

1. I represented the Defendant at trial on February 27, 28, and March 1, 2013 as well as [at] sentencing on May 24, 2013.

2. In his post-conviction motion Defendant alleges "Trial Counsel was ineffective in failing to file motion [sic] to suppress the

---

[9] *Ploof*, 75 A.3d at 821 (quoting *Strickland*, 466 U.S. at 687-689).
[10] *Strickland*, 466 U.S. at 687-689.
[11] *Id.* at 693-94.
[12] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[13] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 20-39.

pre-trial out-of-court identification of Mr. Sudler as impermissibly suggestive and for failing to object to the in-court identification of Mr. Sudler by witnesses following the impermissibly suggestive pre-trial identification which resulted in a violation of Mr. Sadler's [sic] Sixth Amendment right and Due Process rights."

Trial counsel chose not to file a motion to suppress prior trial [sic] because: 1. He did not believe such a motion would be successful; and 2. Argument for such motion would only alert the State of the weaknesses of the out-of-court identification and in turn give them the opportunity at trial to sanitize any in-court identification by the witness. However, after reviewing the Defendant's petition for relief, Trial Counsel now in hindsight agrees that such a motion should have been filed.[14]

15. Sudler devotes nearly 30 pages to discussing emerging trends and cutting-edge research in law and science regarding problems with eyewitness identification, and he cites numerous authorities on the subject.[15] Sudler, however, fails to articulate why the identification procedures raised the risk of misidentification to such a degree as to call the validity of his conviction into question. This Court has previously had occasion to hear and adjudicate Rule 61 claims regarding alleged failures to challenge pre-trial identifications.[16] There, as here, this Court finds it necessary to comment that modifying Delaware's entrenched law based on newly emerging trends in national approaches to pre-trial identifications and photograph array presentations is—distinctly—an issue for the Delaware Supreme Court.

---

[14] Affidavit of John S. Edinger, Jr., Esq. at 1-2.

[15] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 10-39. *See, e.g.*, James Doyle, True Witness: Cops, Courts, Science and the Battle Against Misidentification, 91; Elizabeth Lofus & Katherine Ketcham, *Witness for the Defense: The Accused, the Eyewitness, and the Expert Who Puts Memory On Trial* 13 (1991).

[16] *See, e.g.*, *State v. Burroughs*, 2016 WL 1436949, *4-5 (Del. Super. Apr. 4, 2016) (in *Burroughs*, this Court had occasion to address the fact that, while emerging law and science indicates misidentification issues and overly-suggestive interview techniques are sometimes glossed over, in *Burroughs*, as is the case with the matter at bar, no evidence existed to suggest that the identifications made by the witnesses arose from impermissible identification procedures and interview techniques).

6

16.     Although Sudler seems to advocate for a more progressive standard for photograph lineup identification procedures[17] in his Amended Motion, he acknowledges that the Court applied the two-prong test adopted by Delaware law.[18] In its ruling, the Court stated that there was a two-step process in evaluating claims of suggestive identification procedures.[19] The first prong is whether the out-of-court identification procedure is impermissibly suggestive.[20] The Court noted that the second prong is whether there was a substantial likelihood of misidentification.[21] The Court further stated that "if the [C]ourt finds that the defendant has not carried his burden [to show], by a totality of the circumstances, an impermissibly suggestive photo lineup procedure, then the Court need not reach the second prong."[22]

17.     Sudler claims that investigating Newark Police Officer Corporal D'Elia engaged in impermissible suggestion as to the identity of the Defendant in the photograph lineup Greene received via email. There is no evidence, however, suggesting that any impermissible activity took place via the phone interview or the August 13, 2012 photograph email. Furthermore, Corporal D'Elia reported that Greene identified Defendant from the photograph lineup within a minute or two, which suggests that no coaching or impermissible suggestion occurred.

---

[17] *State v. Henderson*, 27 A.3d 872 (N.J. 2011) (ordering revision and modification of New Jersey's traditional jury instructions on identification that resembled Delaware's instruction and stating more indicia assuring real identification without improper suggestion from law enforcement were necessary to secure justice for defendants).

[18] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 14-20. *See also Harris v. State*, 350 A.2d 768, 770 (Del. 1975) (citing *Neil v. Biggers*, 409 U.S. 188, 196-198 (1972)).

[19] *Biggers*, 409 U.S. at 196-198.

[20] *Id. See also Harris*, 350 A.2d at 770.

[21] *Id. See also Younger v. State*, 496 A.2d 546, 550 (Del. 1985) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1972)) ("That a confirmation is suggestive, without more, however, cannot amount to a due process violation; the unnecessarily suggestive identification procedure must also carry with it the increased danger of irreparable misidentification.").

[22] *Id. See also State v. Burroughs*, 2016 WL 1436949 (Del. Super. Apr. 4, 2016).

18.  Sudler states that there were not enough filler photographs that resembled him in the six-photograph array shown to the witnesses.[23] Part of the argument is that the photographs in the identification array were deficient because only Sudler had all the features described to the Newark Police.[24] Sudler also takes issue with the comments made to the witnesses during the pre-trial identification proceedings: he argues that, when Corporal D'Elia asked Mark Scott and Austin Bucci if they were certain they had made a correct identification, the police were impermissibly interfering with the identification process.[25] When a police officer asks a witness which photograph he or she claims is that of a defendant, this does not rise to the level of impermissible suggestion. Furthermore, it would impose an onerous requirement on police officers if they could not use common speech patterns and idiom when inquiring into which photograph a witness claims is that of a defendant, as Corporal D'Elia did in the present case.[26] The comments referenced by Sudler in his Amended Motion do constitute impermissible suggestion, nor are they indicative of coaching or other untoward behavior by law enforcement.[27] Because the photograph identification procedure was not impermissibly suggestive, it is unnecessary to address the second prong.

19.  While the identification procedures used by the Newark Police may not have been an absolute model of investigative procedure, the procedures certainly pass constitutional muster. Additionally, analyzed under the *Strickland v. Washington* standard, prior counsel was not ineffective for failing to file a Motion to Suppress because the decision to file or not to file such a motion is a strategic decision to be made by counsel upon assessing the specific facts of a case. Furthermore, prior counsel was aware that filing a Motion to Suppress would tip

---

[23] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 26-29.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* (Defendant's post-conviction counsel even notes that Austin Bucci was able to "immediately" eliminate at least "four of the [photographs]" in the array when it was presented to him; the recorded audio conversation referenced in the Amended Motion suggests nothing other than Corporal D'Elia asking Bucci for confirmation regarding which of the final two photographs he was identifying as Derrick Sudler).

off the State's attorneys about the manner in which Defendant was attempting to defend himself.[28] Counsel's course of action was a strategic decision receiving broad deference; it does not, therefore, constitute ineffective assistance.

20. Given the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, trial counsel's decision to not file a Motion to Suppress did not violate the Sixth Amendment. Although it may have been possible for trial counsel to move pre-trial to suppress the identification evidence, it was within counsel's professional judgment to decide what issues to pursue.[29] Therefore, trial counsel was not ineffective for failing to file the Motion to Suppress. Trial counsel's present opinion that "in hindsight [he] agrees that such a motion should have been filed," is, of course, not determinative.[30]

21. Although Sudler's Amended Motion devotes significant attention to the emerging law and science of eyewitness identification, he does not identify any issues with the identification process that could provoke an observer to think there is a reasonable probability the identification proceedings were compromised.[31]

22. The second argument Sudler makes in support of his ineffective assistance of counsel claim rests on the contention that the Court did not give a sufficient jury instruction regarding eyewitness identification, though the jury instruction regarding

---

[28] *Strickland*, 466 U.S. at 688-690 (noting that strategic decisions made by counsel are virtually unchallengeable and articulating a strong presumption that counsel's representation was within the range of reasonable professional assistance).

[29] *Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[C]ounsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success . . . . Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.") (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

[30] Affidavit of John S. Edinger, Jr., Esq. *supra* note 14.

[31] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 10-20, 26-29.

9

identification was the "pattern" instruction. The instruction regarding the identification of the Defendant read:

A matter which has been raised in this case is the identification of the defendant. You must be satisfied beyond a reasonable doubt that the defendant has been accurately identified, that the defendant was, indeed, the one that did the act charged, and that this act actually took place before you may find him guilty of any crime. If there is any reasonable doubt about his identification, you must give him the benefit of such doubt and find him not guilty.[32]

Sudler argues that the trial court ought to have given jury instructions along the lines of those formulated by New Jersey in the aftermath of *Henderson*.[33] The Delaware Superior Court, however, has explicitly declined to follow New Jersey's approach to jury instructions for witness identifications, and Defendant's argument regarding more extensive jury instructions along the lines of those on offer in New Jersey is without merit.[34] Because this Court has so far rejected the reasoning in *Henderson*, it would have been improper for the Court to give jury instructions in line with recent New Jersey— as opposed to Delaware—law.

23.    Finally, Sudler asserts that his counsel was ineffective for failing to argue the admissibility of the in-and-out-of-court identifications made by the witnesses. Based on his trial counsel's strategic decision to not file a Motion to Suppress the identifications made by the witnesses, his trial counsel can hardly be faulted for failing to argue that the identifications ought to have been suppressed.

Therefore, Defendant's Amended Motion for Postconviction Relief is **DENIED**. Defendant's request for an evidentiary hearing is rendered moot and is **DENIED**.

---

[32] Appendix to Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at A090-091.

[33] Pet'r Derrick Sudler's Amended Mot. for Postconviction Relief at 40-43.

[34] *State v. Holmes*, 2012 WL 4086169, *13 (Del. Super. Aug. 23, 2012) (holding that witnesses should be shown photograph lineups separately so as to not taint proceedings, but also explicitly rejecting New Jersey's approach to eyewitness jury instructions embodied in *Henderson*).

10

**IT IS SO ORDERED.**

_____
Richard R. Cooch, R.J.

oc:   Prothonotary
cc:   Investigative Services